UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| AARON CHANEY | CIVIL ACTION |
| VERSUS | NO. 09-7235 |
| OMEGA PROTEIN, INC. | SECTION "N" (4) |

**ORDER AND REASONS**

Before the Court is the Motion for Summary Judgment on Maintenance and Cure (Rec. Doc. 19)[1], filed by Plaintiff Aaron Chaney ("Chaney"). This motion is opposed. (See Rec. Doc. 29). After considering the memoranda of the parties and the applicable law, the Court denies this motion.

I.  **BACKGROUND**

It is uncontested that Chaney was a seaman employed by Omega Protein, Inc. ("OPI") as a seine setter aboard a purse boat of OPI's fishing vessel, the M/V ANNA. Chaney asserts that he was injured while working on the M/V ANNA. OPI acknowledges that there was an incident[2] on July 9, 2009, involving Chaney on the boat, but contests that he was "injured" in the incident.[3] In

---

[1] This is the second motion of its kind. The first Motion for Summary Judgment on Maintenance and Cure filed by Chaney was denied by an Order entered on April 15, 2010. (Rec. Doc. 18). The first motion was denied because Omega Protein, Inc. ("OPI") and the Court had not been provided with evidence to support the claim, and because OPI had not been afforded an opportunity to conduct adequate discovery. Chaney responded to the Order by sending a set of medical documents to OPI, submitting to a deposition, and then refiling his Motion on April 28, 2010, only thirteen days after the first motion was denied.

[2] OPI admits that Chaney fell overboard from a "purse boat," and was in the water for a short period of time before being brought back onto the vessel.

[3] OPI does not believe that Chaney sustained any significant injury from having fallen overboard for a short time. OPI suggests that the documentation surrounding Chaney's fall overboard and the medical treatment he received thereafter do not support a claim that he sustained any significant injury. (See Exhibit 1 to Rec. Doc. 29 and Attachment A thereto). Specifically, OPI notes that the

his motion, Chaney asserts that OPI has a statutory obligation to pay maintenance and cure. Chaney specifically contends that OPI's failure to pay the full amount of maintenance and cure is arbitrary and capricious and that OPI is liable for compensatory damages, penalties and attorney fees, as well as punitive damages in addition to the cure.

According to Chaney's deposition, he was off work for several days after the incident, although he was still on the boat. (Exhibit C-1 to Rec. Doc. 19, p. 150). Chaney testified that he tried to go back to work after the incident because the company doctors were telling him one thing[4], but he was feeling another. (Exhibit C-1 to Rec. Doc. 19, pp. 71-72). Chaney testified that he was finally fired by the captain of the ship on which he was working when he showed the captain the limited duty slip from the company doctor. Chaney testified that the captain said there was not any limited duty on the vessel and thus the plaintiff was not going to be on his boat. (Exhibit C-1 to rec. Doc. 19, p. 153). OPI, on the other hand, claims that Chaney abandoned his employment with OPI

---

Incident Report from Chaney's fall overboard documents that the only medical treatment required following the incident was "antiseptic for scrapes." (*Id*.) Chaney, on the other hand, claims that as opposed to him falling gently into the water (as OPI claims), he was actually jerked off of the purse boat onto the rear edge ramp of the steamer by the hook that snagged his clothing as the two vessels separated. (Exhibit C-1 to Rec. Doc. 19, pp. 130-131).

[4] The extent of Cheney's examinations with OPI company doctors is as follows: On July 10, 2009, Chaney was medically examined at Business Health Partners in Sulphur, Louisiana. An examination was conducted, x-rays were taken, and it was determined that Chaney sustained no more than a bruise to his ribs and a minor muscle strain. He was released to return to full duty as of July 10, 2009. (Attachment B to Exhibit 1 to Rec. Doc. 29, ¶1). On July 15, 2009, Chaney returned to Business Health Partners for a follow–up examination. Again, no significant condition was diagnosed and Chaney was given another full release to return to regular duty. (Attachment B to Exhibit 1 to Rec. Doc. 29, ¶2). On July 28, 2009, Chaney returned to Business Health Partners for a follow–up examination. At that time he was placed on limited duty with the restrictions of no pushing, pulling, lifting or carrying of more than 15 pounds. He was cleared for return to work the same day subject to the listed restrictions. (Attachment B to Exhibit 1 to Rec. Doc. 29, ¶3). On July 31, 2009, Chaney returned to Business Health Partners for a follow–up examination. Chaney was again released to return to work on that date with continued limitations. (Attachment B to Exhibit 1 to Rec. Doc. 29, ¶4).

after August 2, 2009, and did not keep in touch with OPI thereafter. (Exhibit 1 to Rec. Doc. 29, ¶7). Indeed, OPI asserts that Chaney disappeared until suit was filed and that it was not until the first Motion for Summary Judgment was filed that OPI was provided any further medical information regarding Chaney. (See Rec. Doc. 29, p. 3).

OPI asserts that, prior to Chaney abandoning his post and because he was "magnifying his complaints"[5], it had arranged for him to be examined by Dr. Thomas Montgomery, an orthopedist in Lafayette, Louisiana. Chaney testified that he never received such a notice; OPI contests this assertion. (See Exhibit C-1 to Rec. Doc. 19, p.154; Exhibit 1 to Rec. Doc. 29, ¶6).

Chaney testified that he had actually made an appointment himself a week before he left the boat to see an orthopedist, Dr. Zoran Cupic. (Exhibit C-1 to Rec. Doc. 19, p. 79).[6] Indeed, Dr. Cupic of Memorial Bone & Joint Clinic saw Chaney on August 3, 2009 and diagnosed cervical strain, thoracic strain, lumbosacral strain and possible herniated nucleus pulposus. (Exhibit D to Rec. Doc. 19). MRIs of the cervical, thoracic and lumbar spine of Chaney were obtained on August 4 and August 5, 2009 (Exhibit E to Rec. Doc. 19). The cervical MRI showed herniation at C2-3 and bulges at C3-4, C5-6 and T1-T2. The lumbar MRI showed bulges at

---

[5] Rec. Doc. 29, p. 2.

[6] Chaney explains the interesting events that led to him seeing Dr. Cupic and Dr. William Donovan (see *infra*) in further detail in his deposition. Chaney testified that after the incident, while he was still working full time and at full duty with OPI, he was approached by two "agents" for a Houston lawyer named Brian White. The agents (one of whom he described only as "Sylvester"; the other one was named Dick Fleischer) recruited Chaney to travel Houston for prearranged medical examinations by Dr. Cupic and Dr. Donovan. (Exhibit 2 to Rec. Doc. 29, pp. 74-79). When Chaney arrived in Houston he was met by Dick Fleischer, who put him up at a Best Western Hotel for a week, which was paid for by Brian White, the attorney for whom Fleischer was allegedly working. (Exhibit 2 to Rec. Doc. 29, pp. 81-82). Fleischer arranged visits with Dr. Cupic and Dr. Donovan, and also delivered Chaney to White, who allegedly signed Chaney up as a client. (Exhibit 2 to Rec. Doc. 29, pp. 78-82). It should be noted that according to the Court record, White was never Chaney's attorney of record during the pendency of this action.

3

L3-4, L4-5 and L5-S1.

Dr. William F. Donovan, an orthopedic surgeon, examined Chaney on August 5, 2009 and opined that he had radiculopathy in both cervical (into arms) and lumbar regions (into legs). His report of that date states that based upon the orthopedic exam, Chaney requires neurological testing and this has been made necessary by the accident of July 9, 2009. (Exhibit F to Rec. Doc. 19). On August 13, 2009, Dr. Donovan's report diagnosed Chaney with HNP C2-3; Posterior Bulging Discs C3-4, C5-6; Posterior Bulging Discs L3-4, L4-5, L5-S1; and Impingement Syndrome Left Shoulder. The report advised that Chaney was unable to work at that time and that additional treatment was indicated. (Exhibit G to Rec. Doc. 19). On September 2, 2009, Dr. Donovan again wrote a report and again presented the diagnoses of: 1) HNP C2-3; 2) Posterior bulging discs L3-4, L4-5, L5-S1; 3) Contusion Left Shoulder with Tenosynovitis; and, 4) Dorsal Spine Strain. He stated that Chaney was not able to work and additional treated was indicated. (Exhibit H to Rec. Doc. 19).

On September 16, 2009 Chaney returned to Dr. Donovan for follow-up treatment. Dr. Donovan recommended conservative therapy, epidural steroid injection for both cervical and lumbar spine and rehabilitation therapy. He advised that Chaney was not able to work at that time and additional treatment was indicated. (Exhibit I to Rec. Doc. 19). On December, 21, 2009, Chaney saw Dr. George A. Murphy, another orthopedic surgeon selected by Plaintiff and/or his attorneys, who diagnosed him with cervical and lumbar strains with probable disc problems. He requested all of the testing already done on Chaney and declared him unable to work. (Exhibit J to Rec. Doc. 19). On January 26, 2010, Dr. Murphy received the requested medical records. He stated in his report that the testing showed bilateral carpal tunnel syndrome;

4

L4-5 nerve root irritation; multilevel bulging in cervical spine with herniation at C2-3; multilevel degeneration of lumbar spine with bulging at L4-5 and L3-4; inflammation of the shoulder. (Exhibit K to Rec. Doc. 19). On February 23, 2010, Dr. Murphy reported that Chaney still had lower back symptoms and carpal tunnel symptoms. He discussed possible epidural steroid injection and gave Chaney a prescription for it. (Exhibit K and K-1 to Rec. Doc. 19). On March 23, 2010, Dr. Murphy reported that Chaney continued to have back pain into both legs and the carpal tunnel symptoms. On April 21, 2010, there was no major change. Dr. Murphy reported that Chaney still had not been able to get the epidural steroid injection. (Exhibit K to Rec. Doc. 19). This most recent report states that Chaney has been unable to work since his accident of July 9, 2009 and remains unable to work. The report also states that Chaney's inability to work is related to the July 9, 2009 injury. Dr. Murphy recommends lumbar epidural steroid injection. (Exhibit M to Rec. Doc. 19). All of the above medical records have been provided to OPI's attorney, along with demand for payment of maintenance and cure; however, no response has been received from OPI.

In opposition, OPI argues that the facts which have been uncovered during discovery cast significant suspicions on Chaney's claim for maintenance and cure. OPI asserts that Chaney did not exhibit any significant injury following his fall overboard and continued to work full time and without limitations for almost a month. While he was still working for OPI and after being approached by "Sylvester" and Fleischer, OPI asserts that Chaney's complaints became more exaggerated. OPI claims that the doctors hand-picked by the agents for Chaney's attorney issued reports contending that Chaney was unable to continue working. When this second motion for summary judgment was filed, OPI asserts that it had just begun receiving medical records and

5

evaluating Chaney's claim. Accordingly, OPI claims that the evaluation of Chaney's claim will require time to conduct depositions and interviews and time to obtain and evaluate all of the medical records, including any records pre-dating the incident. In that regard, OPI, again, requests that the Court deny summary judgment under Rule56(f) of the Federal Rules of Civil Procedure until the parties have had an opportunity to conduct meaningful discovery on the claim.[7] Chaney, on the other hand, asserts that all medical records and bills were included and attached to the instant motion for summary judgment. (See Rec. Doc. 33, p. 1). Chaney also points out that, to date, OPI has not requested to depose any of the physicians in this case who have examined or treated Chaney.

## II.     LAW AND ANALYSIS

### A.     Summary Judgment Standard

Summary judgment is appropriate in a case if "there is no genuine issues as to any material fact." Fed.R.Civ.P. 56(c). "The moving party bears the burden of demonstrating that there exists no genuine issues of material fact." *In re Vioxx Products Liability Litigation*, 2007 WL 1952964, *4 (E.D. La. July 3, 2007). In determining whether a genuine issue of material fact exists, the Court must "review the facts drawing all inferences most favorable to the party opposing the motion." *Gen. Universal Sys., Inc. v. Lee*, 379 F.3d 131, 137 (5th Cir. 2004). But because "only those disputes over facts that might affect the outcome of the lawsuit under governing substantive law will preclude summary judgment," questions that are unnecessary to the resolution of a particular issue "will not be counted." *Phillips Oil Co. v. OKC Corp.*, 812 F.2d 265, 272 (5th Cir. 1987).

---

[7] The discovery deadline is September 16, 2010. (Rec. Doc. 9).

## B. Maintenance and Cure

A seaman injured in the course of his or her employment has a claim for maintenance and cure. Maintenance and cure is the implied right of the seaman arising from his or her employment relationship with the shipowner and is "independent of any other source of recovery for the seaman ( e.g., recovery for Jones Act claims)." *Bertram v. Freeport McMoran, Inc*, 35 F.3d 1008, 1013 (5th Cir.1994). Thus, whether the seamen or employer was negligent is not at issue. *Brister v. AWI, Inc.*, 946 F.2d 350, 360 (5th Cir.1991). Maintenance is the seaman's right to food and lodging, and cure is the seaman's right to necessary and appropriate medical services. Both rights extend to the point at which the seaman reaches maximum medical improvement. See *Brees v. AWI, Inc.*, 823 F.2d 100, 104 (5th Cir.1987) (citing *Vaughan v. Atkinson*, 369 U.S. 527, 531 (1962)). Therefore, the maintenance and cure duty does not extend to treatment which is only palliative in nature and "results in no betterment in the claimant's condition." *Rashidi v. Am. President Lines*, 96 F.3d 124, 128 (5th Cir.1996).

When there are conflicting diagnoses and prognoses from various physicians, there is a question of fact to be determined by the trier of fact as to a plaintiff's entitlement to maintenance and cure benefits and as to whether an employer's termination of maintenance and cure benefits was arbitrary or capricious. *Estelle v. berry Bros. General Contractors, Inc.*, 2008 WL 718138 (E.D. La. Mar. 14, 2008) (citing *Lodrigue v. Delta Towing, L.L.C.*, 2003 WL 22999425, *6 (E.D.La. Dec. 19, 2003; *Tullos v. Resource Drilling, Inc.*, 750 F.2d 380 (5th Cir.1985)). "When there are ambiguities or doubts [as to a seaman's right to receive maintenance and cure], they are resolved in the seaman's favor." *Vaughan v. Atkinson*, 369 U.S. 527, 532 (1962) (alteration in original).

While a shipowner owes maintenance and cure to a seaman who becomes ill or is injured while in service of the ship, the vessel owner is entitled to investigate and require corroboration of the claim. *Brown v. Parker Drilling Offshore Corp.*, 410 F.3d 166, 171 (5th Cir.2005) (citing *Morals v. Garijak*, 829 F.2d 1355, 1358 (5th Cir.1987)). Here, there clearly is a difference of opinion between the company doctors and those chosen for Chaney by his attorneys. This is a factual dispute appropriately reserved for the trier of fact, especially with the impending trial date of November 15, 2010. Therefore, because genuine issue of material fact exist concerning Chaney's entitlement to continued maintenance and cure, summary judgment is not appropriate. However, OPI should promptly have Chaney examined by Dr. Thomas Montgomery (the orthopedist who it selected to examine Chaney after the incident) or another orthopedist of its choosing to further evaluate Chaney's claim. Further, to the extent that these issues are not resolved by the parties prior to a trial on the merits, the Court notes that any ambiguities as to Chaney's right to receive maintenance and cure will be resolved in his favor, according to *Vaughan* and its progeny.

## III. CONCLUSION

Considering the foregoing, **IT IS ORDERED** that the **Motion for Summary Judgment on Maintenance and Cure (Rec. Doc. 19 )** should be and is hereby **DENIED**.

New Orleans, Louisiana, this 20th day of July 2010.

_____
KURT D. ENGELHARDT
United States District Judge

8